**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 99-50888
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANCESCO LAMPAZIANIE,
also known as Seyed Mohammed Tabib,
also known as Frank Lampazianie,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

May 15, 2001

Before DAVIS, WIENER and STEWART, Circuit Judges,

WIENER, Circuit Judge:

Defendant-Appellant Francesco Lampazianie ("Francesco") pleaded guilty to one count of conspiracy. On appeal, Francesco raises a host of arguments challenging his conviction. Most significant among these is his contention that the district court abused its discretion in refusing to permit him to withdraw his guilty plea on the ground that the plea was coerced. As we conclude that this contention — like Francesco's other grounds for appeal — does not mandate reversal, we affirm.

I.

1

FACTS AND PROCEEDINGS

In June 1998, the government filed a twenty-nine count indictment against Francesco and nine other defendants, including his brothers — Marcello, Antonio, and Pierre — and his sister, Fakhrolsadat Tabib.[1] The defendants were charged with 15 counts of mail fraud and aiding and abetting, in violation of 18 U.S.C. §§ 2 and 1341, nine counts of wire fraud and aiding and abetting in violation of 18 U.S.C. §§ 2 and 1343, two counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and one count of conspiracy in violation of 18 U.S.C. § 371.

According to Francesco's presentence report (the "PSR"), the individuals charged in the indictment, along with Choice Richardson, an attorney not named in the indictment, operated a business specializing in obtaining money from insurance companies on automobile accident claims from April 1992 through April 1996. More specifically, the PSR explains that the Lampazianies structured their "business enterprise" to appear to be two separate entities: (1) the Pain Therapy Clinic operated by Francesco, Marcello, and Fakhrolsadat, and (2) the Law Office of Choice Richardson, in which Francesco and Marcello held an ownership interest and where Antonio and Pierre worked as legal assistants. The brothers used the two businesses to defraud insurance companies on personal injury claims by, _inter alia_, billing insurance

---

[1]This indictment superseded the original indictment filed in July 1997.

2

companies for medical "treatments" given to participants in staged accidents and negotiating fraudulent settlements with insurance companies. As part of this scheme to defraud, Marcello, with the assistance of his brothers and sister, concealed from MetLife and the Social Security Administration the fact that Marcello was receiving income from the business so that he could continue to receive disability payments.[2]

In July 1998, the district court held a hearing on Francesco's motion to suppress evidence obtained by search warrants for the Pain Therapy Clinic. At the hearing, his counsel argued that the warrants were improper "general exploratory rummaging" warrants issued without probable cause. In addition, Francesco's counsel argued that 30 insurance claim files obtained by the government from insurance companies, which files served as the basis for the warrants, were insufficiently identified. The district court orally denied Francesco's motion to suppress at the close of the hearing.

Francesco filed a motion to compel production of the records and documents that supported the search warrants for the Pain Therapy Clinic, including the aforementioned 30 claim files. The motion was granted in October 1998. Approximately one month later, however, the district court granted the government's motion for

---

[2]Marcello claimed that he had not been gainfully employed since April 1990 as a result of an automobile accident; he received payments of about $69,000 from MetLife and about $52,000 from Social Security for his fraudulently claimed inability to work.

reconsideration and ruled that "the documents filed under seal will remain under seal until otherwise ordered by the court."

Francesco also filed a pretrial motion to quash the indictment on the ground of duplicity, arguing that the indictment improperly joins two or more offenses in a single count. Francesco argued that the allegations in the indictment actually reveal six separate schemes to defraud rather than the unitary scheme "broadly described" by the government. The district court denied Francesco's motion to quash the indictment in October 1998.

In January 1999, on the day on which trial was scheduled to begin, Francesco and seven co-defendants pleaded guilty before a magistrate judge as to Count 29 of the indictment (the conspiracy charge). Francesco's plea agreement, which was read into the record, included a binding term that his total offense level under the sentencing guidelines would be fixed at 17, and that his sentencing range would be fixed at between 24 and 30 months. When the magistrate judge asked Francesco, "Are you pleading guilty because you are guilty and for no other reason?[,]," and "Are you pleading guilty freely and voluntarily and with full knowledge of the consequences?[,]" Francesco answered each question in the affirmative; when the magistrate judge asked whether "anyone has threatened you, coerced you, or forced you in any way to plead guilty," he responded in the negative.

Ten days after entering his plea, Francesco filed a motion styled "Defendant's Motion for Extension of Time to File a Motion

4

to Withdraw Guilty Plea[.]" It asserts that "this motion is filed by counsel to withdraw the plea of guilty[,]" but provides no reason for the withdrawal; rather, the motion merely references "problems with the taking of the plea of guilty" and states that "[b]ecause Mr. Lampazianie is currently ill with the flu and at home, it has been impossible for counsel to confer with him in detail regarding this issue and still meet the deadline for objecting to the plea[.]"  The district court accepted the guilty plea the day after Francesco's Motion for Extension of Time to File a Motion to Withdraw Guilty Plea was filed and denied that motion ten days later.

More than six months later, Francesco filed a motion to withdraw his guilty plea for the reason that "his plea of guilty was entered as a result of coercion that was placed on him because he and all the other family members . . . were told that his disabled and mentally ill brother, indicted as Marcello Lampazianie[,] was going to be taken into custody by the Court and sent to the Federal Mental Hospital in Missouri on the spot unless the entire family accepted the 'package deal' offered by the government."  The "package deal" described by Francesco "was that everyone had to plead guilty or his brother would be taken and Defendants and his brother feared for the safety of Marcello, who was heavily medicated and was suicidal."  Stating that it had reviewed the transcript of Francesco's plea colloquy "over and over again," the district court denied Francesco's motion orally at his

5

sentencing hearing.

As specified in his plea agreement, Francesco's offense level was calculated at 17, which included an enhancement for his leadership role in the offense and a reduction for his acceptance of responsibility. As agreed, Francesco's sentencing range was set between 24 and 30 months. Stating that it would "go to the bottom end of the guidelines," the district court sentenced Francesco to 24 months, to be followed by supervised release for three years, restitution in the amount of $61,093.34, and a special assessment.

On appeal, Francesco raises the following objections to his conviction: (1) the district court abused its discretion in denying his motion to withdraw his guilty plea, (2) the indictment was duplicitous, (3) his due process rights were violated by the government's "failure" to produce discovery material related to the issuance of the search warrants, (4) the district court erred in denying his motion to suppress evidence obtained by the search warrants, and (5) he was denied his Sixth Amendment right to effective assistance of counsel.

II.

ANALYSIS

A. Standard of Review

We review the district court's denial of a motion to withdraw a guilty plea for abuse of discretion.[3] The sufficiency of an

---

[3]United States v. Grant, 117 F.3d 788, 789 (5th Cir. 1997).

indictment is subject to <u>de novo</u> review.[4]  We review a district court's denial of a motion to suppress by (1) viewing the facts in the light most favorable to the prevailing party, (2) accepting the district court's factual findings unless clearly erroneous, and (3) considering all questions of law <u>de novo</u>.[5]  A claim of ineffective assistance of counsel generally cannot be reviewed on direct appeal unless it has been presented to the district court;[6] rather, we "resolve claims of inadequate representation on direct appeal only in rare cases where the record allow[s] us to evaluate fairly the merits of the claim."[7]

B.  <u>Withdrawal of the Guilty Plea</u>

Francesco contends that the district court abused its discretion when it refused to permit him to withdraw his guilty plea.  We note at the outset that there is no absolute right for a defendant to withdraw a plea.[8]  Instead, Rule 32(e) of the Federal Rules of Criminal Procedure provides that the district court <u>may</u> grant a motion to withdraw a guilty plea before a defendant is sentenced <u>if</u> the defendant shows "any fair and just reason."  The district court's decision is discretionary and will not be

---

[4]<u>United States v. Cluck</u>, 143 F.3d 174, 178 (5th Cir. 1998).

[5]<u>United States v. Jones</u>, 239 F.3d 716, 719 (5th Cir. 2001).

[6]<u>United States v. Higdon</u>, 832 F.2d 312, 313-14 (5th Cir. 1987).

[7]<u>Id.</u> at 314.

[8]<u>Grant</u>, 117 F.3d at 789.

7

disturbed absent an abuse of discretion.[9]

In reviewing the denial of a motion to withdraw a guilty plea, we consider the seven factors set forth in United States v. Carr: whether (1) the defendant asserted his innocence, (2) withdrawal would prejudice the government, (3) the defendant delayed in filing the withdrawal motion, (4) withdrawal would inconvenience the court, (5) adequate assistance of counsel was available, (6) the plea was knowing and voluntary, and (7) withdrawal would waste judicial resources.[10]   The district court is not required to make findings as to each of the Carr factors.[11]   Neither is any single factor dispositive;[12] instead, the determination is based on a totality of circumstances.[13] The burden of establishing a "fair and just reason" for withdrawing a guilty plea rests at all times with the defendant.[14]

Francesco asserted in his motion to the district court that his plea should be withdrawn because it was entered as a result of

---

[9]United States v. Benavides, 793 F.2d 612, 616 (5th Cir. 1986).

[10]Id. at 343-44.

[11]United States v. Badger, 925 F.2d 101, 104 (5th Cir. 1991).

[12]Id.

[13]Carr, 740 F.2d at 344.

[14]United States v. Brewster, 137 F.3d 853, 858 (5th Cir. 1998).

8

coercion and therefore was not voluntary.[15]  We have scoured the record and can find no shred of evidence to support Francesco's contention that he was somehow coerced into the plea agreement by threats to institutionalize his brother Marcello.  Similarly, we have combed the transcript of the plea colloquy and are satisfied that the consequences of the plea were painstakingly explained to Francesco.  And, as we have already noted, when asked by the magistrate judge whether he was pleading guilty "freely and voluntarily and with full knowledge of the consequences" or whether anyone had "threatened . . . coerced . . . or forced" him "in any way to plead guilty," Francesco declared — under oath — in open court that he had not been threatened or coerced in any way, and that he was entering the plea voluntarily and fully informed.  It is well established that "[s]olemn declarations in open court carry a strong presumption of verity."[16]

With respect to the other <u>Carr</u> factors, we emphasize that Francesco did not assert his innocence or offer either a specific reason or factual underpinnings for withdrawing the plea until

---

[15]Francesco argues for the first time on appeal that "it was impossible for [him] to have made an intelligent and voluntary choice when [he] had no idea as to what the evidence in the possession of the government would show or fail to show."  This belated contention, however, is belied by the record, which reveals that in addition to the indictment setting forth the substantive counts, fraudulent scheme, and overt acts in detail, the defense was provided copies of the government's 97-page exhibit list prior to the plea.

[16]<u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977).

seven months after the plea was entered.[17]  Accordingly, the district court was entitled both to discount Francesco's belated assertions of innocence and to weigh the seven-month delay in denying Francesco's motion.[18]

Furthermore, Francesco's contention that he received inadequate assistance of counsel with respect to the plea agreement is contradicted by the record, which indicates that his counsel was among the most active in protecting his client's rights.  At the plea colloquy, for example, Francesco's counsel successfully added a term to the plea agreement barring further prosecution on the facts of the investigation.  More importantly, Francesco's claim that his counsel "conducted merely a cursory review of the discovery materials in this case" flies in the face of record evidence, such as the government's statement that according to its discovery log, the review of materials by counsel for Francesco was "energetic and extensive."

Finally, Francesco contends that withdrawal of his guilty plea

---

[17]Francesco's "Motion for Extension of Time to File a Motion to Withdraw Guilty Plea" made no statement of innocence and provided no specific reason for the withdrawal; as we have already explained, the motion merely references "problems with the taking of the plea of guilty" and states that "[b]ecause Mr. Lampazianie is currently ill with the flu and at home, it has been impossible for counsel to confer with him in detail" about any such "problems."  By any standard, these vague statements fail to articulate any "fair and just reason" for withdrawing the plea.

[18]See, e.g., Carr, 740 F.2d at 345 (concluding that motion was not promptly filed when defendant waited 22 days after guilty plea).

10

would not prejudice the government because "the [Assistant United States Attorney] made clear that all of the trial preparation had been done and the government was prepared to go forward with a trial." But almost three years have elapsed since the superseding indictment was filed, and for some witnesses the relevant conduct occurred in 1994, over seven years ago. The government also urges us to take into account that this is a complex fraud case, with hundreds of exhibits; and that all other defendants (except one who was found guilty) have pleaded guilty and received relatively short sentences. Under these circumstances, we cannot agree with Francesco that permitting the withdrawal of his plea would not prejudice the government.

In sum, Francesco has failed to carry his burden of showing any "fair and just reason" for the withdrawal of the guilty plea. Our own independent review of the record confirms that the <u>Carr</u> factors fully support the district court's denial of Francesco's motion to withdraw his guilty plea. We therefore find no abuse of discretion.

C. <u>Duplicitous Indictment</u>

Francesco also contends that his conviction should be reversed on the ground that the indictment is duplicitous, i.e., improperly joins two or more offenses in a single count. In the absence of any reservation of conditions, however, a guilty plea constitutes a waiver of the right to challenge nonjurisdictional pretrial

11

rulings on appeal.[19]  If the record contains no indication of a reservation of appellate rights, then the plea is presumptively unconditional, and we may not reach the merits of the appeal.[20]

In the instant case, the record is devoid of any indication that Francesco reserved the right to contest the district court's nonjurisdictional pretrial rulings on appeal.  There is nothing in the plea agreement or elsewhere in the record resembling such a reservation.  Although we reiterate our admonition that "the preferred practice is for the district court to advise the defendant that by pleading guilty he waives his right to appeal non-jurisdictional pretrial issues,"[21] we nevertheless must affirm

_____

[19]See United States v. Wise, 179 F.3d 184, 187 (5th Cir. 1999). Although an indictment's failure to charge an offense on its face is a jurisdictional defect that a defendant may challenge at any time, see United States v. Cabrera-Teran, 168 F.3d 141, 143 (5th Cir. 1999), an indictment's duplicity is not.  See United States v. Doherty, 17 F.3d 1056, 1058-59 (7th Cir. 1994); United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986).

[20]See United States v. Bell, 966 F.2d 914, 917 (5th Cir. 1992). Rule 11(a)(2) provides, "[w]ith the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion."  The Advisory Committee Notes make clear that "the availability of a conditional plea under specified circumstances will aid in clarifying the fact that traditional, unqualified pleas do constitute a waiver of nonjurisdictional defects."

[21]Id. at 917 n.3.  We also note that, although not binding on this case, amended Federal Rule of Criminal Procedure 11(c), which became effective on December 1, 1999, now provides that "[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . (6) the terms of any provision in a plea agreement waiving the

12

Francesco's conviction on this ground because his voluntary and unconditional plea waived his right to appeal any nonjurisdictional defects in the prior proceedings.

In any event, Francesco has made no claim that any prejudice resulted from the alleged duplicity of the indictment. We have held that even when an indictment is duplicitous, reversal is not required if no prejudice results.[22] Accordingly, we conclude that Francesco's challenge to the indictment would fail on the merits, even if waiver were absent.

D. <u>Discovery Claims</u>

Francesco further contends that his due process rights were violated by the government's "failure" to produce discovery material related to the issuance of the search warrants. He argues that under <u>Brady v. Maryland</u>, which held that "the suppression <u>by the prosecution</u> of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution,"[23] the government's "failure" to produce the underlying documents related to the 30 claim files violated his right to due process.

---

right to appeal or to collaterally attack the sentence" (emphasis added). In any event, Francesco's plea, which was unconditional, did not contain any such terms to be explained by the district court.

[22]<u>See</u> <u>United States v. Drury</u>, 687 F.2d 63, 66 (5th Cir. 1983).

[23]<u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963) (emphasis added).

13

As we have already explained, Francesco's guilty plea waived any subsequent claims of violations. Nevertheless, the record makes clear that the government did not "fail" to produce the 30 claim files; rather, the district court reconsidered its order compelling discovery of the files and ruled that "the documents filed under seal will remain under seal until otherwise ordered by the court." In light of the prosecutor's declaration to Francesco's counsel that "I know of no exculpatory, impeaching, or mitigating information regarding your clients other than that which was previously made available to you[,]" and the reasonable inference that the district court likewise found nothing exculpatory in the relevant documents under seal, we conclude that even absent waiver, we would hold his allegations of a <u>Brady</u> violation to lack merit.

E. <u>Denial of Motion to Suppress</u>

Francesco asserts that the district court erred in denying his motion to suppress evidence obtained by the search warrants. More specifically, Francesco contends that the warrants issued in the instant case lacked probable cause and failed to describe with particularity the place to be searched and the things to be seized, as required the Fourth Amendment and Federal Rule of Criminal Procedure 41(c)(1).

We again reiterate that Francesco did not reserve the right to review any adverse determinations of pretrial motions, such as the motion to suppress evidence obtained from the search warrants.

14

Accordingly, even though we need not reach the merits of this issue, we note in passing that Francesco has failed both (1) to demonstrate that items such as "patient treatment cards," computer billing records, and bank records which pertained to the scheme to defraud insurance companies by mail and wire communications were not described with sufficient particularity, and (2) to show that the breadth of the warrant was not justified by the assertion, supported by the affidavit, that the locations contained records of sham courses of medical treatment.[24]  In sum, we conclude that Francesco's challenge to the search warrants would be found meritless even if it had not been waived.

## E.  Ineffective Assistance of Counsel

Finally, Francesco contends that he was denied his Sixth Amendment right to effective assistance of counsel. More specifically, Francesco argues that his counsel was "ineffective with respect to the diligence that he exercised in pursuing the discovery underlying the search warrant, specifically with regards to the '30 claims[.]'"  In general, however, a claim of ineffective assistance of counsel cannot be reviewed on direct appeal when, as here, it was not raised in the district court, because there has

---

[24]See Williams v. Kunze, 806 F.2d 594, 598 (5th Cir. 1986) ("Where probable cause exists to believe that an entire business was merely a scheme to defraud, or that all the records of a business are likely to constitute evidence, a warrant authorizing the seizure of all such records and describing them in generic terms is sufficient to meet the particularity requirement of the fourth amendment.").

15

been no opportunity to develop record evidence on the merits of the claim.[25]

Even if we were to review the issue as framed by Francesco, however, it does not appear to us that, based on the current state of the record, he could succeed in meeting the high standard of proof required to establish a viable ineffective assistance of counsel claim. As we have already pointed out, Francesco's counsel diligently pursued discovery of the 30 claim files; Francesco's complaint that his counsel "never filed a motion for sanctions or any other type of relief regarding the Government's refusal to turn over evidence of the '30 claims'" is nonsensical in light of the district court's order that the materials, having been submitted to the court by the government, remain under seal.

Nevertheless, as we are unable to evaluate the full extent of Francesco's ineffective-assistance argument on the record as it now stands, we do not review it on this direct appeal. Our decision today does not, therefore, preclude Francesco from raising the issue in an appropriate collateral proceeding.[26]

III.

CONCLUSION

For the reasons explained above, Francesco's conviction is AFFIRMED.

---

[25]See United States v. Rinard, 956 F.2d 85, 87 (5th Cir. 1992).

[26]See 28 U.S.C. § 2255.

16